IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| TOWN PARK HOTEL CORPORATION,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>PRISKOS INVESTMENTS, INC., et al.,<br><br>Defendants.<br><br><br>And related counterclaims and third party complaint | ORDER<br>AND<br>MEMORANDUM DECISION<br><br><br>Case No. 1:02-CV-164 TC |

In this contract and tort dispute between the former owners of the now-defunct Crowne Plaza Hotel of Ogden ("Hotel") and the company that managed the Hotel, the court has before it two motions for summary judgment and two motions to strike. The motions were filed by Town Park Hotel Corporation (the former Hotel manager) and Six Continents/Bass Hotels (associated with Town Park). Both are seeking summary dismissal of the contract and tort claims brought by the former Hotel owners Priskos Investments, Inc., CPH Operating Company, and Mr. Vasilios Priskos (the "Priskos Parties"). For the reasons set forth below, the court grants in part and denies in part Town Park's Motion for Summary Judgment, and grants Six Continents' Motion for Summary Judgment. The Motions to Strike are denied as moot.

## I. PROCEDURAL BACKGROUND

The motions, filed by counterclaim defendant Town Park Hotel Corporation and third

party defendant Six Continents/Bass Hotels, do not address the claims raised in the original

Complaint by Town Park in its capacity as Plaintiff.[1]  Instead, the motions challenge the claims

asserted in the Priskos Parties' First Amended Counterclaim and Third Party Complaint.

The Priskos Parties, who seek actual and punitive damages, filed the following

counterclaims against Town Park: (1) Breach of Management Agreement; (2) Misrepresentation;

(3) Breach of Fiduciary Duty; and (4) Breach of Covenant of Good Faith and Fair Dealing.  In

addition, the Priskos Parties filed a third party complaint against Six Continents/Bass Hotels

(hereinafter "Six Continents"), seeking actual and punitive damages and asserting the following

claims: (1) Breach of the Technical Services Agreement; (2) Breach of the Agreement for

Purchasing Services; and (3) Breach of Fiduciary Duty.

## II. FACTUAL BACKGROUND[2]

Town Park Hotel Corporation is in the business of managing hotels.  Vasilios Priskos was

interested in turning the Eccles Building in Ogden into a hotel, and he formed Priskos

Investments to accomplish his goal.  After a series of negotiations, on September 30, 1999, Town

Park and Priskos Investments entered into a Management Agreement.  Later, after the pre-

opening activities were underway, Priskos Investments entered into two other contracts

delegating various duties relating to the management of the Hotel: (1) the August 10, 2001

Technical Services Agreement between Priskos Investments and Bass Hotels & Resorts (now

---

[1]In the original Complaint, Town Park asserts the following claims against the Priskos Parties: breach of contract, unjust enrichment and declaratory judgment (seeking a declaration that Town Park did not breach the Management Contract).

[2]Town Park and Six Continents each filed a motion to strike certain portions of the Priskos Parties' statements of fact opposing the motions for summary judgment.  The court is not relying on the evidence that is being challenged unless specifically stated in this Order.

known as Six Continents); and (2) the December 14, 2001 Agreement for Purchasing Services

between Priskos Investments and Six Continents.  All three contracts are at issue in this

litigation.

The Hotel opened during the first week of February 2002, but many financial and

logistical problems forced its closure in December 2002.  Soon thereafter, Priskos Investments'

lender foreclosed on the Hotel.  Now the parties involved have filed causes of action against each

other, blaming the others for failure of the hotel.

### III. ANALYSIS

**A.**      **Motions for Summary Judgment**

     **1.**      **Legal Standard**

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c);  see also Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664,

670 (10th Cir. 1998).  The court must "examine the factual record and reasonable inferences

therefrom in the light most favorable to the party opposing summary judgment."  Applied

Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

But summary judgment should be granted if the plaintiff, who bears the burden of proof,

lacks the evidence necessary to support one or more elements of his claims.  See Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986) ("[W]e find no express or implied requirement in Rule 56 that

the moving party support its motion with affidavits or other similar materials negating the

opponent's claim.").  And the non-moving party

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

### 2.    Town Park's Motion for Summary Judgment

#### a.    The Priskos Parties' Claims for Breach of the Management Agreement

Town Park contends that the claims for breach of the Management Agreement fail because (1) the Priskos Parties have waived their breach of contract claims because they did not provide notice of default to Town Park as required by the Management Agreement; (2) the Priskos Parties waived their argument that Town Park failed to submit timely and adequate pre-opening and yearly budgets by failing to object to those budgets as required by the Management Agreement; and (3) no record evidence supports the breach of contract claims.

> i.    The Priskos Parties have not waived their breach of contract claims.

Town Park contends that the Priskos Parties waived their breach of contract claims because they failed to provide Town Park with notice of default as required by the Management Agreement.  The court disagrees.

The portion of the Management Agreement upon which Town Park relies reads in relevant part:

> 16.01 Events of Default.  Subject to the provisions of Article 22, it shall be an Event of Default hereunder if any one or more of the following events shall occur:  (a) The breach, default or non-compliance in any material respect by a party hereto with any covenants, obligations or agreements to be performed by

4

> such party under this Agreement, followed by written notice of such breach, default or non-compliance from the other party to such defaulting party . . . and failure of such defaulting party . . . to remedy or correct such breach, default or non-compliance within twenty (20) business days after receipt of such notice. . . .
>
> 16.02 Default Termination.  (a) If an Event of Default occurs and has not been cured, this Agreement shall terminate <u>at the election of the Non-Defaulting Party</u>. . . .

(Sept. 30, 1999 Management Agreement §§ 16.01(a), 16.02(a) (emphasis added).)  The language quoted above does not contain any requirement that notice of default be given before bringing a lawsuit for breach.  It simply says that the non-defaulting party may terminate the agreement if the other party defaults.  It does not say that the non-defaulting party must terminate the Agreement or that there is no other alternative to termination.

Moreover, Article 16 of the Management Agreement distinguishes breach from termination, stating that the Management Agreement shall not impair any right to breach a suit for breach:

> The terms of this Agreement shall not be deemed to impair the right of any party to exercise any right or remedy, whether for damage, injunctions, specific performance or otherwise, upon any breach or termination thereof.

(<u>Id.</u> § 16.02(e).)  Failure to take advantage of the notice of default provision does not preclude the Priskos Parties from instituting a suit for breach of contract.

        ii.      The Priskos Parties have not waived their argument regarding the timing and adequacy of the pre-opening and yearly budgets.

Town Park contends that the Priskos Parties have waived any claims regarding the timing and adequacy of the pre-opening and yearly budgets because the Priskos Parties did not lodge timely written objections with Town Park.  The court disagrees.

A waiver has occurred when "a party has intentionally relinquished a known right,

benefit, or advantage." IHC Health Servs., Inc. v. D & K Mgmt., Inc., 73 P.3d 320, 323 (Utah

2003).  Although a waiver may be express or implied, it must be "distinctly made." Id.; Soter's,

Inc. v. Deseret Fed. Sav. & Loan Ass'n, 857 P.2d 935, 942 (Utah 1993).

      The portions of the Management Agreement upon which Town Park relies read in

relevant part as follows:

> 4.01 Pre-Opening Budget and Plan.  At least one hundred eighty (180) days prior
> to the projected Opening Date, Manager [Town Park] shall prepare and submit to
> Owner [Priskos Investments] a comprehensive Pre-Opening Budget and Plan
> which sets forth all actions which Manager, in its judgment, anticipates as being
> necessary or desirable to prepare the Hotel for opening. . . . Owner's approval of
> the Pre-Opening Budget and Plan shall not be unreasonably withheld or delayed
> and shall be deemed given unless a specific written objection thereto is delivered
> by Owner to Manager within ten (10) business days after submission thereof.
>
> . . .
>
> 7.02 Yearly Budgets. (a) Not less than sixty (60) days prior to the Opening Date
> and the first day of each Fiscal Year after the Opening Date, Manager shall submit
> to Owner for Owner's approval a proposed Yearly Budget . . . .  Owner's approval
> of the Yearly Budget . . . shall not be unreasonably withheld or delayed and shall
> be deemed given unless a specific written objection thereto is delivered by Owner
> to Manager within thirty (30) days after submission of such budgets.

(Management Agreement §§ 4.01, 7.02 (emphasis added).)

      It is undisputed that Town Park submitted the final draft of the pre-opening budget to the

Priskos Parties on December 12, 2001, months after it was due and a little over one month before

the Hotel opening.  It is also undisputed that Town Park submitted the yearly budget on February

14, 2002, eight days after the Hotel opened.  Further, the language of the Management

Agreement expressly provides that Priskos Investments was not obligated to object until after

Town Park delivered a budget.  At a minimum, the Priskos Parties had no duty under the plain

language of the Management Agreement to object to the timeliness of the budgets, so that

argument was not waived.

As for the Priskos Parties' claim concerning the content of the budgets, given Town Park's late submissions of the budgets, the Priskos Parties were in a difficult situation. At that point, time was of the essence and going through the formalities of filing a specific written objection and, if a dispute existed, going forward with arbitration arguably seemed pointless. Moreover, evidence in the record shows that the Priskos Parties did object, both as to the timeliness and content of Town Park's budgets, just not in writing. This evidence contradicts a finding that the Priskos Parties intentionally relinquished their rights under the Management Agreement. And it would be inequitable to hold the Priskos Parties to the strict requirements of the notice provision when, based on the undisputed facts, Town Park—by submitting the budgets so late—did not strictly comply with the budget submission requirements.

The Priskos Parties are not precluded from bringing their claim of breach concerning the timeliness and adequacy of the pre-opening and yearly budgets.

> iii.   The Priskos Parties have presented evidence creating genuine disputes of material fact regarding whether Town Park breached the Management Agreement.

The Priskos Parties allege that Town Park breached multiple obligations set forth in the Management Agreement. Town Park contends that there is no record evidence to support the breach of contract claims. In its motion, Town Park challenges six of those breach claims, which allege that: (1) Town Park failed to provide adequate operating supplies and equipment; (2) Town Park failed to adequately maintain the Hotel and make necessary repairs; (3) Town Park failed to keep books and records in accordance with Generally Accepted Accounting Principles; (4) Town Park failed to properly disburse gross revenues from the Hotel's operating

account; (5) Town Park did not timely submit a final accounting and deliver all books and records of the Hotel; and (6) Town Park improperly ceased management of the Hotel in December 2002.

In support of their motion, the Priskos Parties submit an expert report of Steven J. Belmonte analyzing and criticizing the performance of the Plaintiff and Third Party Plaintiffs in managing the Hotel.  The Priskos Parties also cite to a multitude of problems that arose during the pre-opening and post-opening periods.  Some of the statements of fact presented by the Priskos Parties have been challenged by Town Park and Six Continents as inadmissible for various evidentiary reasons.  (See Motions to Strike.)  But even if those particular statements of fact are not considered by the court, the court finds that the Priskos Parties have presented facts sufficient that a reasonable jury could find that the Management Agreement was breached by Town Park.  Accordingly, Town Park is not entitled to summary judgment on the breach of contract claims.

b.     <u>The Economic Loss Rule does not bar the remaining tort claims</u>.

Town Park contends that the Economic Loss rule articulated by Utah courts bars the Priskos Parties from bringing their tort claims.  The Economic Loss rules provides that a "party suffering only economic loss for the breach of an express or implied contractual duty may not assert a tort claim from such a breach absent an independent duty of care under tort law." Hermansen v. Tasulis, 48 P.3d 235, 240 (Utah 2002).

During the hearing, counsel for the Priskos Parties clarified that they were seeking recovery for events and alleged breaches of duties that arose before any contract was executed, that is, before the 1999 Management Agreement and subsequent Purchasing and Technical

8

Services Agreements.  (See Transcript of Feb. 7, 2006 Hearing [hereinafter "Tr."] at 26, 40.)

Given that clarification, the court finds that the lack of any alleged express or implied contractual

duty during the time the Priskos Parties assert the existence of tort duties, the Economic Loss

Rule necessarily does not bar the Priskos Parties' tort claims.  But that does not end the inquiry.

The next inquiry is whether the tort causes of action survive on their own merits.

> c.    The Priskos Parties' Claim for Breach of Fiduciary Duty

The Priskos Parties contend that Town Park owed them a fiduciary duty that arose before

any of the contracts were executed.  They base this on their assertion that Town Park held itself

out as an expert in the hotel management business and that Town Park owed them a duty to

disclose information that the proposed hotel project was not feasible.  (See Tr. at 9-10, 14, 22-23,

40, 44.)  They also assert that the relationship was essentially a joint venture thereby giving rise

to a fiduciary duty. (See Tr. at 25.)  Town Park contends that the Priskos Parties cannot establish

the existence of a duty, much less evidence showing breach of any such duty.

A fiduciary relationship generally only arises in one of two situations: (1) when the

parties create such a relationship by contract (for example, principal/agent or attorney/client) or

such a relationship exists through legal proceedings (for example, legal guardian or executor of

estate), or (2) when the facts and circumstances warrant implying such a fiduciary obligation on

one of the parties.  First Sec. Bank of Utah N.A. v. Banberry Dev. Corp., 786 P.2d 1326, 1332

(Utah 1990).

Given that the Priskos Parties' fiduciary duty claim is based on the relationship existing

before any contract was executed, the court must determine whether the second of the two

situations has been established.

> A fiduciary or confidential relationship will be found under Utah law only "when one party, having gained the trust and confidence of another, exercises extraordinary influence over the other party."  When "the parties deal at arm's length or in an adversarial relationship, no fiduciary relationship can be said to exist."

Hafen v. Strebeck, 338 F. Supp. 2d 1257, 1267 (D. Utah 2004) (quoting Gold Standard, Inc. v. Getty Oil Co., 915 P.2d 1060, 1064 (Utah 1996)).

The record shows clearly that Town Park and the Priskos Parties were commercial entities who engaged in an arm's length transaction.  No fiduciary duty arose from those dealings.  But the Priskos Parties, during the hearing, attempted to characterize the relationship as a joint venture, a situation where fiduciary duties do exist.  (See Tr. at 25.)  "Typically, 'fiduciary obligations inhere . . . where two entities are engaged in a joint venture where they share profits and risks or where the entities jointly own or control assets.'"  Hafen, 338 F. Supp. 2d at 1267 (internal citation omitted).

In Utah, a joint venture "does not always arise pursuant to formal agreement; rather, it is a relationship voluntarily entered by the parties and may be proven by the actions taken by the parties."  Rogers v. M.O. Bitner Co., 738 P.2d 1029, 1032 (Utah 1987).

> The requirements for the relationship are not exactly defined, but certain elements are essential: the parties must combine their property, money, effects, skill, labor and knowledge.  As a general rule, there must be a community of interest in the performance of the common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and unless there is an agreement to the contrary, a duty to share in any losses which may be sustained.

Basset v. Baker, 530 P.2d 1, 2 (Utah 1974), quoted in Rogers, 738 P.2d at 1032.

The evidence does not support a finding that Town Park and the Priskos Parties were joint venturers when they were in the process of negotiating the Management Agreement.  They

10

did not "combine their property, money, effects, skill, labor and knowledge" to come up with the

Management Agreement.  There were working toward the formation of a commercial

relationship and doing so at arm's length.  And the Management Agreement itself specifically

acknowledges that the relationship is not a joint venture.  According to the Management

Agreement, "Manager and Owner shall not by virtue of this Agreement be construed as joint

venturers or partners of each other, and neither shall have the power to bind or obligate the other

except as set forth in this Agreement."  (Management Agreement § 18.01.)  The Priskos Parties

simply contracted for services from Town Park.  Tellingly, counsel for the Priskos Parties stated

during the hearing that Town Park was "gambling with Mr. Priskos' money, and . . . not taking a

risk on the off chance [the project] does succeed and they get their management fees."  (Tr. at

31.)

        In a Seventh Circuit case between a hotel management company and a hotel owner, the

court found that the hotel management company had no fiduciary relationship with the hotel

owner.  See Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363, 1373-74 (7th Cir.

1990).  In Olympia, the court stated:

>        Olympia is in the business of managing hotels, using a form of contract that
> Racine has not attempted to show is atypical of the hotel management business.
> We decline the invitation to recast hotel contract managers as trustees or
> guardians of the hotel owners, other than in the performance of financial functions
> in which the manager is exercising a traditional fiduciary role, such as the
> management of bank accounts.

Id. at 1374.

        The court finds that no special relationship existed here and so Town Park did not owe

any fiduciary duty to any of the Priskos Parties.  Accordingly, Town Park is entitled to summary

11

judgment on this claim.

        d.    <u>The Priskos Parties' Claim for Negligent Misrepresentation</u>

Town Park contends that the Priskos Parties cannot prove the elements of their negligent misrepresentation claim.  To prevail on a claim for negligent misrepresentation, the Priskos Parties must establish that Town Park carelessly or negligently made a false representation concerning a presently existing material fact; that Town Park should have reasonably foreseen that the Priskos Parties were likely to rely upon the fact; that the Priskos Parties reasonably relied on the misrepresentation in ignorance of its falsity; and that the misrepresentation induced them to act to their injury and damage.  <u>Gildea v. Guardian Title Co. of Utah</u>, 970 P.2d 1265, 1271 (Utah 1998); <u>Robinson v. Tripco Investment, Inc.</u>, 21 P.3d 219, 223 (Utah Ct. App. 2000).  The elements at issue here are whether the representation concerned a presently existing material fact, whether the representation was false, and, if so, whether Town Park knew the representation was false or made it carelessly.

In support of their negligent misrepresentation claim, the Priskos Parties allege that Town Park misrepresented that the Hotel as conceived was economically advisable, desirable, and feasible.  The misrepresentation is alleged to be contained in a pro forma statement issued by Town Park (through Michael F. Higgins, a Crowne Plaza sales representative) to the Priskos Parties before the parties entered into the Management Agreement.  Purportedly, the pro forma numbers indicated that the Hotel would succeed and that Mr. Higgins indicated that the Hotel was feasible.

Town Park contends that no evidence suggests that Town Park represented that the Hotel was economically viable or desirable.  Indeed, Mr. Priskos testified that he did not hire Town

Park to perform a feasibility study or appraisal on the property, and admits that Mr. Higgins never specifically stated that the hotel was feasible.  (Priskos Dep. at 213.)  Rather, Mr. Priskos "assumed" that Mr. Higgins thought the hotel would be  feasible.  (See Priskos Dep. at 213-14.)

Town Park also contends that there is no evidence suggesting that the representations, and specifically the pro forma, even if made by Town Park (which Town Park disputes but assumes for purpose of argument), were false.  Indeed, the Priskos Parties' allegation that the Hotel was not economically viable is belied by their own expert, Steven J. Belmonte, who opined that, if not for Town Park's mismanagement, the Hotel would more than likely "be a viable and profitable business today."  (Belmonte Expert Report at 17.)  And there is no evidence that the information in the pro forma was false at the time it was created.  The Priskos Parties may not bootstrap future events (which is what they rely upon) to show that, in hindsight, the information in the pro forma was incorrect.

Based on a review of the record, the court agrees with Town Park.  Accordingly, Town Park is entitled to summary judgment on this claim.[3]

e.      The Priskos Parties' Claim for Breach of the Implied Covenant of Good
        Faith and Fair Dealing

Town Park contends that the Priskos Parties' claim for breach of an implied covenant is superfluous because it is simply a restatement of their breach of contract claim.  "An implied covenant of good faith and fair dealing inheres in every contract.  Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract."  Eggett v.

---

[3]Given the court's findings, the court need not and therefore declines to reach the issue of whether the Priskos Parties reasonably relied on the representation.

Wasatch Energy Corp., 94 P.3d 193, 197 (Utah 2004) (internal citations omitted).

> A claim for breach of the implied covenant of good faith and fair dealing . . . is based on judicially recognized duties not found within the four corners of the contract.  These duties, unlike the duties expressly stated in the contract, are not subject to alteration by the parties.  They exist whenever a contract is entered, and are imposed on the parties "consistent with the agreed common purpose" of the contract.

Christiansen v. Farmers Ins. Exch., 116 P.3d 259, 261-62 (Utah 2005) (internal citations omitted).  The question is whether Town Park complied with obligation to perform the Management Agreement in good faith, and whether Town Park's actions were consistent with the "agreed common purpose and the justified expectations of the other party."  St. Benedict's Dev. Co. v. St. Benedict's Hosp., 811 P.2d 194, 200 (Utah 1991).

The Priskos Parties allege that Priskos Investments relied on Town Park's representations that it was an expert in hotel management in granting Town Park "mostly unfettered" discretion in managing and controlling the Hotel.  (Response to Town Park Request for Admission No. 10, attached as Ex. 2 to Williams Decl.)  According to the Priskos Parties, they "delegated all authorities and responsibilities for operation of the Hotel to [Town Park]."  (Priskos Parties' Mem. Opp'n Town Park's Mot. Summ. J. at 55-56, 93.)  The Priskos Parties further allege that Town Park used the discretion it was given under the Management Agreement to "make poor decisions with regard to the hiring of employees and staff, basic accounting procedures, reservation policies, the ordering of supplies and equipment, and basic repair to the hotel and its furnishings."  (Id.)  They also contend that Town Park improperly ceased managing the Hotel in December 2002, which caused a substantial loss of reputation and financial damage to the Hotel and Priskos Investments.  (See First Am. Counterclaim ¶¶ 17-18.)

"Broadly speaking, the more leeway a party has under the terms of the contract, the more contracting parties may invoke the protections of the covenant of good faith and fair dealing in the exercise of that discretion."  Eggett, 94 P.3d at 198.  The court finds that the Priskos Parties have presented evidence sufficient for a reasonable jury to find that the implied covenant of good faith and fair dealing has been breached by Town Park.  Accordingly, the court declines to grant summary judgment on this claim.[4]

    f.    The Priskos Parties' Claim for Punitive Damages

Under Utah law, "punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others."  Utah Code Ann. § 78-18-1(1)(a).  Town Park contends that the Priskos Parties have not presented evidence sufficient to send the issue of punitive damages to the jury.  See Gleave v. Denver & Rio Grande W. R.R. Co., 749 P.2d 660, 670 (Utah Ct. App. 1988) (holding that when there is no evidence to justify an award of punitive damages, the court should not send the issue to the jury).

But punitive damages are not available in contract actions.  Because the Priskos Parties' tort claims fail the summary judgment standard, the court must also dismiss the punitive damages claim against Town Park.  See Hal Taylor Assocs. v. Unionamerica, Inc., 657 P.2d 743, 750

---

[4]To the extent that Town Park argues that the economic loss rule also bars the Priskos Parties' claim for breach of the implied covenant of good faith and fair dealing (see Town Park's Mem. Supp. Mot. Summ. J. at 12, 31), the court disagrees.  The cause of action for breach of the implied covenant is a creature of contract, not tort, law.  See, e.g., Eggett v. Wasatch Energy Corp., 94 P.3d 193, 197 (Utah 2004) ("A violation of the covenant is a breach of the contract.").

15

(Utah 1982) (absent "some independent tort indicating malice, fraud or wanton disregard for the rights of others," punitive damages are not available in a breach of contract claim).

Even if the Priskos Parties tort claims were to survive, the court finds that the Priskos Parties have not presented substantial evidence from which a jury could reasonably conclude that Town Park's actions were willful and malicious or manifested a knowing and reckless indifference toward, and disregard of, the rights of the Priskos Parties.  Gleave v. Denver & Rio Grande W. R.R. Co., 749 P.2d 660, 670 (Utah Ct. App. 1988) ("evidence of simple negligence alone does not support an award of punitive damages").

      **2.**    **Six Continents' Motion for Summary Judgment**

          a.    <u>The Priskos Parties' Claim for Breach of the Technical Services Agreement</u>

Six Continents contends that a damages limitation provision in the Technical Services Agreement bars the Priskos Parties' claim for anything other than actual damages resulting from an alleged breach of the Agreement.  That provision reads:

> 5.05 <u>Consequential Damages</u>.  In no event whatsoever shall either party be liable to the other party hereunder for incidental, consequential, punitive or special damages, including, without limitation, damages for loss of profit or use, irrespective of the nature of such damages or the cause thereof.

(Technical Services Agreement § 5.05.)

The Priskos Parties contend that the provision—which they refer to as the Agreement's "exculpatory clause"—is unenforceable because it is unconscionable, both procedurally and substantively.

> With a few exceptions, it is still axiomatic in contract law that persons dealing at arm's length are entitled to contract on their own terms without the intervention of the courts for the purpose of relieving one side or the other from the effects of a

bad bargain. . . . An established exception is that if a contract is unconscionable,
in whole or in part, the court may, on equitable grounds, refuse to enforce the
unconscionable provisions, or it may construe the contract to avoid an
unconscionable result.

Resource Mgmt. Co. v. Weston Ranch & Livestock Co. Inc., 706 P.2d 1028, 1040-41 (Utah

1985) (internal quotations and citations omitted).  The purpose of the doctrine of

unconscionability is to prevent oppression and unfair surprise.  Id. at 1041.  The standard for

proving that a contract provision is unconscionable is very high (that is, the provision or

circumstances must "shock the conscience").  Id. at 1041, 1044; see also Ryan v. Dan's Food

Stores, Inc., 972 P.2d 395, 402 (Utah 1998) ("A party claiming unconscionability bears a heavy

burden.").  Indeed, the Utah Supreme Court has noted that generally, provisions limiting

incidental and consequential damages are conscionable in commercial settings.  See Schurtz v.

BMW of N. America, Inc., 814 P.2d 1108, 1114 (Utah 1991).[5]  The question of whether the

damages limitation provision is unconscionable is a question of law for the court.  Sosa v.

Paulos, 924 P.2d 357, 360 (Utah 1996).

     Under Utah law, a court's analysis is twofold: whether the provision is substantively

unconscionable and whether the provision is procedurally unconscionable.  Resource Mgmt., 706

P.2d at 1041.  "'Substantive unconscionability' examines the relative fairness of the obligations

assumed.  'Procedural unconscionability' focuses on the manner in which the contract was

negotiated and the circumstances of the parties."  Id.  "While it is conceivable that a contract

might be unconscionable on the theory of unfair surprise [procedural unconscionability] without

---

     [5]Although Schurtz was a Uniform Commercial Code (UCC) case, the principles apply as
well in a non-UCC commercial setting.  See Resource Mgmt., 706 P.2d at 1041 (noting that
UCC approach to unconscionability is also applicable in cases not governed by UCC).

any substantive imbalance in the obligations of the parties to the contract, that would be rare."

Id. at 1043.  The court must look at the circumstances existing at the time the contract was

formed.  Id.

          i.      Substantive Unconscionability

"Substantive unconscionability is indicated by 'contract terms so one-sided as to oppress

or unfairly surprise an innocent party.'"  Resource Mgmt., 706 P.2d at 1041.  The Priskos Parties

contend that the damage limitation provision is substantively unconscionable because

> the terms of the Technical Services Agreement's exculpatory clause are
> "unreasonably favorable" to [Six Continents] at the expense of Priskos. . . . While
> the exculpatory clause in the Technical Services Agreement claims to exclude
> consequential damages for both Priskos or [Six Continents], in truth, the clause
> functions only to exclude consequential damages for [Six Continents'] breaches.

(Defs.' Mem. Opp'n Six Continents' Mot. Summ. J. at 24.)  The Priskos Parties claim that Six

Continents would not have any real consequential damages in the event of a breach by the

Priskos Parties.  But this argument is not persuasive.  The language of the damage limitation

clause is mutual (that is, it applies to both parties).  And the Priskos Parties offer nothing but

speculation to support their position that Six Continents would not actually suffer any

consequential damages as a result of a breach by the Priskos Parties.

Perhaps most importantly, the damage limitation provision is not the type of provision

that is so one-sided that it shocks the conscience.  Even if it is more advantageous to Six

Continents, that alone is not enough to create the necessary "overall imbalance in the obligations

and rights imposed by the bargain."  Bekins Bar V Ranch v. Huth, 664 P.2d 455, 462 (Utah

1983).  See also Ryan, 972 P.2d at 402 ("Even if a contract term is unreasonable or more

advantageous to one party, the contract, without more, is not unconscionable–the terms must be

'so one-sided as to oppress . . . an innocent party.'")(quoting <u>Sosa</u>, 924 P.2d at 361).  The court

finds that the damage limitation provision in the Technical Services Agreement is not

substantively unconscionable.

ii.        Procedural Unconscionability

Procedural unconscionability concerns the negotiation of the contract and a court inquires

"whether there was overreaching by a contracting party occupying an unfairly superior bargaining

position." <u>Ryan</u>, 972 P.2d at 403.  Procedural unconscionability has also been characterized as

an absence of meaningful choice.  <u>Resource Mgmt.</u>, 706 P.2d at 1042.  Its existence must be

determined by evaluating all of the circumstances surrounding the transaction.  <u>Id.</u> at 1043.

> "In many cases the meaningfulness of the choice is negated by a gross inequality
> of bargaining power.  The manner in which the contract was entered is also
> relevant to this consideration.  Did each party to the contract, considering his
> obvious education or lack of it, have a reasonable opportunity to understand the
> terms of the contract, or were the important terms hidden in a maze of fine print
> and minimized by deceptive sales practices?"

<u>Id.</u> (quoting <u>Williams v. Walker-Thomas Furniture Co.</u>, 350 F.2d 445, 449 (D.C. Cir. 1965)).

Factors to consider include:

> (1) whether each party had a reasonable opportunity to understand the terms and
> conditions of the agreement; (2) whether there was a lack of opportunity for
> meaningful negotiation; (3) whether the agreement was printed on a duplicate or
> boilerplate form drafted solely by the party in the strongest bargaining position;
> (4) whether the terms of the agreement were explained to the weaker party; (5)
> whether the aggrieved party had a meaningful choice or instead felt compelled to
> accept the terms of the agreement; and (6) whether the stronger party employed
> deceptive practices to obscure key contractual provisions.

<u>Ryan</u>, 972 P.2d at 403 (quoting <u>Sosa</u>, 924 P.2d at 362) (noting that none of the factors are

dispositive).

The Priskos Parties contend that "Priskos had no 'meaningful choice' in determining

19

whether to even enter into the Technical Services Agreement, and therefore had no choice in

determining whether to accept the exculpatory clause at issue." (Priskos Parties' Mem. Opp'n

Six Continents' Mot. Summ. J. at 24.)  That, they say, makes the Agreement procedurally

unconscionable.  To support their position, they point to the following language in the Technical

Services Agreement:

> WHEREAS, Owner desires and Town Park requires that [Six Continents]
> provide its expertise and consulting services to assist with the planning, design
> and furnishing of the Hotel, and with the preparation of specifications and
> standards and for purchasing the Furnishings and Equipment, the Operating
> Equipment and the Operating Supplies (as such terms are defined in the
> Management Agreement) . . . all in order that the Hotel upon completion shall
> meet Crowne Plaza Standards[.]

(Technical Services Agreement at 1 (emphasis added).)  The Priskos Parties contend that the

Management Agreement, which they signed in 1999, required them to enter into the Technical

Services Agreement in 2001.

Even assuming the "whereas" clause in the Technical Services Agreement's preamble is

binding, the Priskos Parties' argument fails because the language of the Management Agreement

belies their argument.  Article 10 of the Management Agreement reads in full:

> 10.01 Optional Services.  Owner acknowledges that Manager and its
> various divisions and subsidiaries sometimes provide non-mandatory services
> which may relate to the Hotel in addition to the those which are considered in or
> encompassed by this Agreement, such as, by way of example, construction project
> management or technical services including design, architectural, engineering,
> auditing and estimating services, not encompassed by this Agreement.  Owner
> agrees to consider in good faith any proposals presented to it by Manager or any
> of its affiliates for such additional services relative to the Hotel; it being
> understood, however that this Section shall in no event be construed to require
> Owner to accept any such proposals.

(Management Agreement art. 10 (emphasis added).)  Given the language quoted above, the

Priskos Parties' suggestion that the Technical Services Agreement had to be signed or they could not have continued with the Management Agreement is not persuasive.

Overall, given the parties' equal bargaining power as savvy business persons and commercial entities, given the lack of any evidence of deception, and given the Priskos Parties' apparent opportunity to review and analyze the unobscured language of the contract before executing it,[6] the court finds that there is no evidence of procedural unconscionability.

### iii. Applicability and Effect of Damages Limitation Clause

The damage limitation clause prohibits recovery of "incidental, consequential, punitive or special damages, including, without limitation, damages for loss of profit or use, irrespective of the nature of such damages or the cause thereof." (Technical Services Agreement § 5.05.) The Priskos Parties have not submitted any actual damages calculations regarding the Technical Services Agreement. Rather, they claim that the consequences stemming from the alleged breaches of the Technical Services Agreement were part of the reason the Hotel failed. They are seeking consequential damages, a recovery of which is expressly prohibited by Section 5.05 of the Agreement. Accordingly, the court finds that Six Continents is entitled to summary judgment on the Priskos Parties' claim for breach of the Technical Services Agreement.

---

[6]During oral argument, counsel for the Priskos Parties referred to an email sent by Mr. Priskos to representatives of the Technical Services group saying something to the effect of "Despite my attorney's advice, I will sign this [Technical Services] Agreement because I know you have my best interests in mind." (The court does not know whether counsel was reading the actual email or simply paraphrasing it.) The parties did not identify this email with any citation to the record, but both sides appear to agree that Mr. Priskos had his attorney review the agreement, that his attorney told him to reject the agreement, but that Mr. Priskos signed it anyway despite his attorney's advice. (See Tr. at 57-58, 63.)

b.      The Priskos Parties' Claim for Breach of Agreement for Purchasing
        Services

On December 14, 2001, Priskos Investments and Six Continents executed an Agreement

for Purchasing Services.  The Priskos Parties, in their Third Party Complaint, allege that Six

Continents breached that agreement by (1) purchasing inadequate supplies and equipment needed

for the operation of the Hotel; (2) causing equipment and supplies to be purchased from vendors

that had existing relationships with Six Continents, regardless of lack of competitive pricing; and

(3) purchasing mass quantities of items and receiving inappropriate kickbacks from certain

suppliers.

During the hearing, the court questioned whether the evidence and claims of breach

presented by the Priskos Parties fell within the four corners of the Agreement.  The Priskos

Parties essentially conceded that the record before the court does not support a claim for breach

of the Agreement for Purchasing Services.  (See Tr. at 61.)  Accordingly, Six Continents is

entitled to summary judgment on that claim.

c.      The Priskos Parties' Claim for Breach of Fiduciary Duty

To succeed on their claim, the Priskos Parties must first establish that Six Continents

owed them a fiduciary duty.  The Priskos Parties, during the hearing, clarified that their fiduciary

duty claims deal only with events that occurred before the September 1999 Management

Agreement was executed.  (See Tr. at 26, 40.)

But Six Continents did not come into the picture until after the Management Agreement

was executed.  There is no evidence to support the claim of a pre-contractual fiduciary duty, nor

did the Technical Services Agreement or the Agreement for Purchasing Services establish a

22

fiduciary relationship.  Plus, any claims of breach of obligations set forth in the agreements would have to be pursued under a breach of contract claim, not a breach of fiduciary duty tort claim, as dictated by the economic loss rule (that is, there is no evidence of a duty independent of the purchasing and technical services agreements).  Finally, it appears that the Priskos Parties abandoned their fiduciary duty claims against Six Continents.  (See Tr. at 54; Priskos Parties' Opp'n to Six Continents' Mem. Supp. Mot. Summ. J. (failing to address Six Continents' argument that, even assuming a fiduciary duty existed, there is no evidence of harm arising from any alleged breach of a fiduciary duty).)  For these reasons, the court finds that Six Continents is entitled to summary judgment on the Priskos Parties' claim for breach of fiduciary duty.

d.    <u>The Priskos Parties' Claim for Punitive Damages</u>

For the same reasons stated above regarding the Priskos Parties' claim for punitive damages against Town Park, the court finds that Six Continents is entitled to summary judgment on the Priskos Parties' punitive damages claim.

**B.    <u>Motions to Strike</u>**

Both Town Park and Six Continents have filed motions to strike certain portions of the Priskos Parties' opposition briefs.  As noted above, the court did not rely on the evidence being challenged unless specifically stated in this Order.

In the end, the court did not need to consider the challenged evidence in order to make its decisions on questions of law, and so, to that extent, the motions to strike are moot.  Also, the court did not need the challenged evidence to determine that the Priskos Parties have presented evidence sufficient to create a genuine issue of material fact on questions of fact.  For that reason, the motions to strike are moot, and, accordingly, denied.

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1.      Town Park Hotel Corporation's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  Specifically, Town Park is entitled to summary judgment on the Priskos Parties' claims for Misrepresentation, Breach of Fiduciary Duty, and Punitive Damages. Town Park, however, is not entitled to summary judgment on the Priskos Parties' claims for Breach of the Management Agreement or Breach of the Covenant of Good Faith and Fair Dealing.

2.      Six Continents Hotels, Inc.'s Motion for Summary Judgment is GRANTED.

3.      Town Park Hotel Corporation's Motion to Strike is DENIED AS MOOT.

4.      Six Continents Hotels, Inc.'s Motion to Strike is DENIED AS MOOT.

DATED this 14th day of March, 2006.

BY THE COURT:

TENA CAMPBELL
United States District Judge